IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 10-cv-00346-REB-BNB

TINA M. JARAMILLO,

Plaintiff,

v.

R&S STEEL, INC.,

Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on **Defendant R & S Steel, Inc.'s Motion for Summary Judgment** [Doc. #16, filed 05/14/2010] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED.

### I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe her pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed. R. Civ. P., provides that summary judgment should be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, discovery and disclosure materials on file, and any affidavits, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 979 (10th Cir. 2002).

The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial. Celotex, 447 U.S. at 324. Only admissible evidence may be considered when ruling on a motion for summary judgment. World of Sleep, Inc. v. La-Z-Boy Chair Co., 756 F.2d 1467, 1474 (10th Cir. 1985).

## II. UNDISPUTED MATERIAL FACTS

1. R & S Steel, Inc. ("R & S Steel") is a full service steel supply company with approximately 50 employees in Denver, Colorado. *Motion*, Ex. A-1, ¶ 2.

2. R & S Steel does not require progressive steps of discipline, but takes disciplinary action appropriate to the circumstances pertaining to an employee. Id. at ¶ 3 and Attachment C.

3. The plaintiff was hired by R & S Steel as a receptionist on November 21, 2005. Id. at Ex. A-2, ¶ 2.

4. The plaintiff's direct supervisor throughout her employment was Kerri Caro, R & S Steel's Office-Credit Manager. <u>Id.</u> at ¶¶ 1-2.

5. As a cost reduction step, and to limit the amount of over-time worked by employees, R & S Steel reorganized some work assignments in 2008. One result of the reorganization was to reassign the administrative task of creating daily manifests from George Neuberger, the Production & Inventory Manager, to employees Rosario Rangel and the plaintiff. <u>Id.</u> at ¶ 3.

6. A daily manifest is a computer-generated list of R & S Steel products that are needed to fill that day's list of orders. Creating the daily manifest involves obtaining a handwritten list of order numbers from an R & S Steel Dispatch employee. This list reflects orders to be shipped by R & S Steel the following workday. The handwritten list of order numbers is then entered into a computer so that the resulting manifests can be stored electronically and printed. <u>Id.</u> at ¶ 4; Ex. A-3, ¶ 2.

7. In December 2008, Mr. Neuberger provided Ms. Rangel and the plaintiff with training and instruction on the steps to take to create the daily manifests. <u>Id.</u> at Ex. A-2, ¶ 5; Ex. A-3, ¶ 3.

8. During her training on creating the manifests, Mr. Neuberger observed that the plaintiff took notes on completing the task and helped Ms. Rangel with explanations of the process when Ms. Rangel expressed that she was having a hard time following his instruction. <u>Id.</u> at Ex. A-3, ¶ 4.

9. Following the training and instruction provided to Ms. Rangel and the plaintiff, it was the belief and understanding of Ms. Caro and Mr. Neuberger that Ms. Rangel and the plaintiff would share the task of creating the daily manifests. <u>Id.</u> at Ex. A-2, ¶ 6; Ex. A-3, ¶ 5.

10. On March 13, 2009, Ms. Rangel was absent from work due to illness. Ms. Caro sent an email to the plaintiff asking her to complete that day's manifest in Ms. Rangel's absence. Id. at Ex. A-2, ¶ 7.

11. The plaintiff sent Ms. Caro an email response stating that she did not remember how to create the manifests. Id. at ¶ 7.

12. Ms. Caro then sent an email to Mr. Neuberger, with a copy to the plaintiff, asking him to re-train the plaintiff on creating the manifests. Id.; Ex. A-3, ¶ 6.

13. The plaintiff sent Ms. Caro a reply email stating that she would prepare the manifests. However, immediately thereafter she sent Ms. Caro another email stating that she was not going to prepare the manifests. When Ms. Caro asked "Why not?" the plaintiff stated "I just don't." Id. at Ex. A-2, ¶ 7 and Attachment 1.

14. On the afternoon of March 13, 2009, Ms. Caro asked the plaintiff to come to her office. Melissa Mata, Human Resources Representative for R & S Steel, was present at the meeting by telephone. At the meeting, Ms. Caro once again asked the plaintiff to do the day's manifest. The plaintiff again refused to create the manifest, stating that she felt "it was not her job." It was explained to the plaintiff that R & S Steel employees were considered a team and that employees needed to do the work that supervisors requested of them. The plaintiff did not express any willingness to change her position about creating the manifest. Because company practice and written policy clearly consider refusal to do assigned work and failure to carry out reasonable orders as unacceptable behavior, the plaintiff's employment was terminated for insubordination. Id. at Ex. A-1, ¶¶ 9-10; Ex. A-2, ¶ 8.

### III.  ANALYSIS

The plaintiff filed her Second Amended Title VII Complaint on March 10, 2010 [Doc. #6] (the "Complaint").  The Complaint alleges that the plaintiff's boyfriend worked for R & S Steel until he was fired on February 27, 2009, and R & S Steel fired the plaintiff in retaliation for helping her boyfriend type and send a discrimination complaint to the CEO.  *Complaint*, p. 5.[1]

Title VII prohibits retaliation against individuals who oppose discriminatory employment practices or participate in complaints or investigations of employment practices prohibited by Title VII.  42 U.S.C. § 2000e-3(a).[2]  Where, as here, there is no direct evidence of retaliation, a claim of retaliation is analyzed under the burden-shifting framework announced in McDonnell Douglas Corp. V. Green, 411 U.S. 792, 802-04 (1973).  In Stover v. Martinez, 382 F.3d 1064, 1070 (10th Cir. 2004), the Tenth Circuit Court of Appeals stated:

> Following this framework, an employee must first present a prima facie case of retaliation, which then shifts the burden to the employer to produce a legitimate, nondiscriminatory justification for taking the disputed employment action.  If the employer provides a legitimate, non-discriminatory justification for the

---

[1] The pages of the Complaint are not consecutively paginated.  Therefore, I cite to the pages of the Complaint as they are assigned by the court's docketing system.

[2] Specifically, Section 2000e-3(a) provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

>     action, the burden shifts back to the employee to provide evidence
>     showing that the employer's proffered reason is a pretext for
>     discrimination.

Id. at 1070-71.

To establish a *prima facie* case of retaliation, a plaintiff must establish that (1) she engaged in protected opposition to discrimination; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. Sanchez v. Denver Public Schools, 164 F.3d 527, 533 (10th Cir. 1998). The plaintiff bears the burden of establishing the *prima facie* case. Id.

Here, the plaintiff does not provide any competent evidence to establish a *prima facie* case. Neither the allegations of the Complaint nor the statements contained in the plaintiff's response to the Motion are sworn [Doc. #21] (the "Response"). The plaintiff attached to the Complaint a document that purports to be a summary of a telephone conversation between an EEOC investigator and the plaintiff. *Complaint*, pp. 6-7. The document addresses the plaintiff's contention that she assisted her boyfriend in preparing his discrimination complaint. The document is not authenticated; it is not sufficiently identified; it appears to be impermissible hearsay; and it contains no facial indicia of reliability. Therefore, the document is not appropriate for consideration on summary judgment.[3] See The Law Company, Inc. v. Mohawk Construction and Supply Company, Inc., 577 F.3d 1164, 1170 (10th Cir. 2009) (noting that under Federal Rule of Evidence 901, "[t]he requirement of authentication or identification as a

---

[3] Because the plaintiff does not provide any evidence to establish that she assisted her boyfriend to prepare a discrimination complaint (or the type of assistance she provided), I do not address whether providing assistance in preparing a complaint of discrimination is a protected activity under Title VII.

6

condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims").

Moreover, there is no evidence showing a causal connection between a protected activity and the plaintiff's termination. The Tenth Circuit Court of Appeals has stated the following with regard to the causal connection requirement:

> A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action. Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation. We have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation.

O'Neal v. Ferguson Const. Co., 237 F.3d 1248, 1253 (10th Cir. 2001) (internal quotations and citations omitted).

Where the only evidence of an adverse employment action is termination from employment, as here, the date of the protected activity and the date of the termination are key to determining a causal connection "because the closer [the termination] occurred to the protected activity, the more likely it will support a showing of causation." Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999). The plaintiff does not provide any competent evidence to show whether she assisted her boyfriend; how she assisted him; when she assisted him or when her supervisors knew she had assisted him; or whether her supervisors knew she had assisted him.

In addition, the defendants have provided evidence which demonstrates that the plaintiff was terminated for a legitimate, non-discriminatory reason--insubordination. The plaintiff does

7

not provide any competent evidence to show that the defendant's proffered reason is a pretext for discrimination.

"A plaintiff demonstrates pretext by producing evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Jaramillo v. Colorado Judicial Dept., 427 F.3d 1303, 1308 (10th Cir. 2005) (internal quotations omitted). There are three ways by which a plaintiff typically establishes pretext: (1) presenting evidence that defendant's stated reason for the adverse action was false; (2) presenting evidence that the defendant acted contrary to written company policy; or (3) presenting evidence that the defendant acted contrary to an unwritten policy or practice. Kendrick v. Penske Trans. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000).

The plaintiff attached to her Complaint three letters: a letter to the EEOC from counsel for R & S Steel (on counsel's letterhead) dated June 23, 2009, which states its position concerning the plaintiff's retaliation claim, *Complaint*, pp. 10-14; a letter from the EEOC (on EEOC letterhead) to the plaintiff dated October 5, 2009, which states that R & S Steel has provided a response to the plaintiff's charge of discrimination and informs the plaintiff that she can submit a rebuttal to the response, *Complaint*, p. 9; and a letter from the plaintiff to the EEOC (stamped "RECEIVED" by the EEOC on October 20, 2009) rebutting R & S Steel's statement of its position. Id. at 16-17. These letters contain sufficient indicia of reliability as evidenced by their letterheads, dates, and relationship to one another. Assuming these letters are evidence that can be considered on summary judgment, they do not establish a *prima facie* case of retaliation,

nor do they establish pretext.

In her letter to the EEOC, the plaintiff argues that she was no longer preparing the manifests and that Ms. Rangel was preparing them because (1) performance of this duty took the plaintiff away from her desk; (2) Ms. Caro did not like the idea of covering for the plaintiff when she was away from her desk; (3) Ms. Caro suggested that Ms. Rangel prepare the manifests; and (4) someone else prepared the manifest the last time Mr. Rangel was absent from work. Id. at 16-17.

However, the plaintiff does not provide any evidence to create a material fact dispute regarding whether she was fired for insubordination for refusing to do the manifest on March 13, 2009, as requested by Ms. Caro. The undisputed evidence shows that the plaintiff was asked to prepare the manifest on March 13, 2009, because Ms. Rangel was ill; the plaintiff had previously been trained to do the manifests; the plaintiff sent Ms. Caro an email stating that she did not remember how to create the manifests; Ms. Caro then sent an email to Mr. Neuberger, with a copy to plaintiff, asking him to re-train the plaintiff;[4] the plaintiff emailed Ms. Caro and said she would prepare the manifest, but immediately sent another email stating she would not prepare the manifest; she again refused to prepare the manifest in Ms. Caro's office, stating that it was not her job; R & S Steel does not require progressive steps of discipline, but takes disciplinary action appropriate to the circumstances pertaining to an employee; and because company practice and written policy clearly consider refusal to do assigned work and failure to carry out

---

[4] The plaintiff states that Ms. Caro did not inform her that Mr. Neuberger would retrain her, but this does not justify her refusal, nor does it negate the undisputed fact that Ms. Caro sent an email to Mr. Neuberger, with a copy to the plaintiff, asking him to re-train her on creating the manifests.

reasonable orders as unacceptable behavior, the plaintiff's employment with R & S Steel was terminated for insubordination.

The plaintiff has failed to establish a *prima facie* case of discriminatory retaliation and she has failed to show that the defendant's legitimate nondiscriminatory reason for terminating her employment is pretext for discrimination.

## IV.  CONCLUSION

I respectfully RECOMMEND that the Motion be GRANTED and that summary judgment enter in favor of the defendant.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated January 20, 2011.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge